IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**COMBINED INSURANCE COMPANY OF AMERICA,**

        **Plaintiff**,

v.

**KELLY LANGDON**, **et al.**,

        **Defendants**.

Case No. 24-1105-DDC-ADM

## MEMORANDUM AND ORDER

This matter comes before the court on the parties' Joint Motion for Approval of Minor Settlement Agreement (Doc. 18). Plaintiff Combined Insurance Company of America filed this interpleader action in June 2024. Doc. 1. Plaintiff seeks to distribute $120,000 in life insurance proceeds stemming from two whole life insurance policies issued to Wayne A. Combs, now deceased. But defendants potentially had adverse and competing claims to the insurance proceeds. So, plaintiff, the insurer, filed this action to ascertain how to distribute the proceeds properly. The court's subject matter jurisdiction derives from 28 U.S.C. § 1335, providing original jurisdiction for civil interpleader actions, and 28 U.S.C. § 1332, diversity jurisdiction.[1]

---

[1] To establish federal court jurisdiction, 28 U.S.C. § 1335 requires that an interpleader action target $500 or more and involve two or more adverse claimants with diverse citizenship. This action targets $120,000. Doc. 1 at 4 (Compl. ¶ 22). And plaintiff alleges that one defendant, Kortney Goss, is a citizen of Missouri. *Id.* at 2 (Compl. ¶ 6). All other defendants are citizens of Kansas. *Id.* at 1–2 (Compl. ¶¶ 2–5, 7). These allegations suffice.

Plaintiff's allegations similarly satisfy diversity jurisdiction. Starting with the obvious, $120,000 is more than $75,000, as required by 28 U.S.C. § 1332. And plaintiff alleges that it is a citizen of Illinois, while defendants are citizens of Kansas and Missouri, establishing complete diversity of citizenship. Doc. 1 at 1–2 (Compl. ¶¶ 1–7).

Defendants include: Wayne Combs's ex-wife Kelly Combs (now Kelly Langdon); two biological sons of Wayne Combs and Kelly Langdon; and two biological children of Kelly Langdon from another marriage. There's also one non-family defendant, Garnand Funeral Home. Garnand provided funeral services for Wayne Combs and submitted a claim to Combined Insurance for funeral expenses totaling $24,800.95.

The court conducted a hearing on the Joint Motion for Approval of Minor Settlement (Doc. 18) on January 28, 2025. The court grants the motion, as set forth below.

## I.     Background

### *The Life Insurance Policies*

Combined Insurance issued to Wayne Combs the first whole life insurance policy—for $70,000— in March 2007 and the second policy—for $50,000—in January 2010. Doc. 1 at 2–3 (Compl. ¶¶ 12–13). Both policies listed Wayne Combs's then-spouse Kelly Combs (now Kelly Langdon) as the primary beneficiary. *Id.* at 3 (Compl. ¶¶ 14–15). The 2007 policy didn't list a contingent beneficiary. *Id.* (Compl. ¶ 14). The 2010 policy listed the eldest biological son of Wayne Combs—Miles Combs—as contingent beneficiary. *Id.* (Compl. ¶ 15). The youngest biological son of Wayne Combs—J.C. (a minor)—wasn't included as a beneficiary on either policy. *See* Doc. 1-3 at 1 (Pl. Ex. C) (2007 policy application listing no contingent beneficiary); Doc. 1-4 at 1 (Pl. Ex. D) (2010 policy application listing son Miles Combs as contingent beneficiary).

Wayne Combs and Kelly Langdon divorced in 2016. Doc. 1 at 3 (Compl. ¶ 17). Wayne Combs requested change-of-beneficiary forms from Combined Insurance in both 2016 and 2022, but he never returned the forms to designate new beneficiaries. *Id.* (Compl. ¶ 16).

2

### *The Settlement Agreement*

The parties have signed a settlement agreement (Doc. 18-1).  The settlement agreement divides the $120,000 in insurance proceeds as follows:

| Miles Combs, biological son of Wayne Combs & Kelly Langdon | $46,599.52 (38.8% of $120,000) |
|---|---|
| J.C., biological son of Wayne Combs & Kelly Langdon | $46,599.53 (deposited into an interest-bearing restricted account accessible by court order or when he reaches majority age) (38.8% of $120,000) |
| Garnand Funeral Home | $24,800.95 in funeral expenses (20.7% of $120,000) |
| Shultz Law Office, P.A. | $1,400 in attorney's fees / costs (1.2% of $120,000) |
| Heydman Law, LLC | $600 in Guardian ad Litem fees / costs (0.5% of $120,000) |

Doc. 18-1 at 2–3 (Agreement 3.A.–E.).  In the settlement agreement, Kelly Langdon and her other biological children, Lucas Goss and Kourtney Goss, expressly waive any right or interest they may have in the proceeds.  *Id.* at 3 (Agreement 4.).

### *The Joint Motions*

The parties filed two joint motions:  Joint Motion for Entry of Consent Judgment (Doc. 17) and Joint Motion for Approval of Minor Settlement Agreement (Doc. 18).  The court has granted the first and separately enters a Consent Judgment contemporaneously with this Order.  The parties also move for the court to approve the settlement for Wayne Combs's minor son, J.C.  Doc. 18.  The court explains its reasons for granting this second motion, below.

**II.     Legal Standard**

Kansas law[2] treats minors "as persons under legal disability[.]" *In re Est. of Wise*, 890 P.2d 744, 749 (Kan. Ct. App. 1995).  And so, a court must approve a settlement contract before it

---

[2]     In previous rulings, our court has predicted that the Tenth Circuit would apply Kansas law in evaluating a settlement agreement involving a minor.  *See, e.g., T.Y. as Next Friend of P.Y. v. Shawnee*

can bind a minor plaintiff. *Childs ex rel. Harvey v. Williams*, 757 P.2d 302, 303 (Kan. 1988). Kansas law requires courts "to exercise extensive oversight, ensuring that the injured minor's claims are not sold short by an agreed settlement merely outlined at a 'friendly' hearing." *White ex rel. White v. Allied Mut. Ins. Co.*, 31 P.3d 328, 330 (Kan. Ct. App. 2001). Courts "'may not simply rely on the fact that the minor's parents have consented to the proposed agreement. Instead, the court must determine whether the agreement is in the minor's best interests.'" *Id.* (quoting *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 205 (Kan. Ct. App. 1999)). The Kansas Supreme Court has upheld a state trial court's approval of a settlement on a minor's behalf after "it engaged in a full examination of the facts of the accident and the extent of the minor's injuries." *Id.* (quotation cleaned up) (referring to *Perry v. Umberger*, 65 P.2d 280 (Kan. 1937)) . And the Kansas cases have quoted the Alabama Supreme Court's view that approval should be given not because there is agreement but, instead, "'because it appears from the evidence that the amount is just and fair'" and "'conservative of the minor's interests.'" *Mo. Pac. Ry. Co. v. Lasca*, 99 P. 616, 618 (Kan. 1909) (quoting *Tenn. Coal, Iron & R.R. Co. v. Hayes*, 12 So. 98, 103 (Ala. 1892)).

**III.     Analysis**

The settlement agreement here provides, first, for payment of funeral expenses and legal fees. Doc. 18-1 at 2 (Agreement 3.A.–C.). It then divides the remaining proceeds between the

---

*Mission Sch. Dist. USD 512*, No. 17-2589-DDC-GEB, 2020 WL 59649, at *1 (D. Kan. Jan. 6, 2020) ("The court predicts that the Tenth Circuit would direct the court to apply Kansas law when, as here, it exercises federal question jurisdiction over a case involving a settlement on a minor's behalf."); *Edgin on behalf of I.E. v. Blue Valley Unified Sch. Dist. No. 229*, No. 20-CV-2547-JPO, 2021 WL 4713047, at *1 (D. Kan. Sept. 20, 2021) (same); *S.C. as Next Friend of A.J. v. Lansing Unified Sch. Dist. #469*, No. 18-2228-DDC-JPO, 2019 WL 1762708, at *1 (D. Kan. Apr. 22, 2019) (same); *S.S. as next friend of L.S. v. Napolitano*, No. 18-2491-ADM, 2020 WL 489526, at *2 (D. Kan. Jan. 30, 2020) (applying Kansas law); Seeing no reason to deviate from that prediction here, the court applies Kansas law.

deceased's two biological children. *Id.* at 2–3 (Agreement 3.D.–E.). At the hearing, both parties agreed that using life insurance proceeds to pay for funeral expenses is a standard practice. And the parties view the legal fees, totaling $2,000 including the guardian ad litem fee, as reasonable. The court agrees.

The court also concludes that the settlement's division of the remaining proceeds works in J.C.'s best interest. The deceased's ex-wife and her children by another marriage have all disavowed any right to the proceeds. Doc. 18-1 at 3 (Agreement 4.). The agreement thus provides for an equitable division between just the biological children of the deceased. Recall that Miles Combs, J.C.'s elder brother, was a named contingent beneficiary on the 2010 policy, while neither policy named J.C. as a contingent beneficiary. Miles Combs could have asserted his sole right to the 2010 policy proceeds apart from J.C., leaving J.C. with a smaller amount than he receives under this settlement agreement. Instead, the settlement agreement provides for an equitable division. The court thus concludes that J.C.'s receipt of half the proceeds, after deducting standard funeral expenses and reasonable legal expenses, is in his best interest.

What's more, William I. Heydman—guardian ad litem for J.C.—reviewed and approved the proposed settlement. Doc. 18 at 2. He "recommends that the Court find the proposed settlement to be fair and reasonable[.]" *Id.* And, at the hearing, J.C.'s mother reported that J.C. is aware of and satisfied with the settlement agreement's terms. J.C. is a high school student. His mother recounted specific ways that J.C. plans to use the proceeds to further his education. Given J.C.'s age and knowledge of the agreement, the court factors into its analysis his satisfaction with its terms, as well. *See S.C. ex rel. A.J. v. Lansing Unified Sch. Dist. #469*, No. 18-2228-DDC-JPO, 2019 WL 1762708, at *2 (D. Kan. Apr. 22, 2019) (approving minor settlement, in part, based on "efforts made . . . to explain the settlement agreement to" minor).

Finally, the settlement agreement complies with Kansas law. Kan. Stat. Ann. § 59-3055(a) allows a court to authorize deposits of money vested in a minor into a savings account, payable to the minor when he turns 18. The settlement agreement here provides for the deposit of J.C.'s proceeds into an interest-bearing account at Dream First Bank, Garden City, Kansas. Doc. 18-1 at 2–3 (Agreement 3.E.). And it specifies that the money "shall be preserved for the minor child until the minor shall reach the age of majority." *Id.* at 3. In so doing, the settlement agreement manages J.C.'s proceeds as dictated by Kansas law.

The court thus concludes that the settlement agreement both divides and distributes the proceeds in a fashion that corresponds with J.C.'s best interest. And it therefore approves the minor settlement agreement.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the parties' Joint Motion for Approval of Minor Settlement Agreement (Doc. 18) is granted.

**IT IS SO ORDERED.**

**Dated this 21st day of February, 2025, at Kansas City, Kansas.**

>                     **s/ Daniel D. Crabtree**
>                     **Daniel D. Crabtree**
>                     **United States District Judge**